IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| T.Y.B.E. LEARNING CENTER, & <br> CARMEN AUSTELL, <br>                       Petitioners, <br> V. <br> HON. JOSEPH P. BINDBEUTEL, <br> KATHY QUICK, KIMBERLY SPRENGER, <br>                       Defendants. | CAUSE NO. 4:09-CV-1463 <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF**
**PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION**

For purposes of its request for a preliminary injunction, TYBE challenges DHSS's communications to third-parties asserting that TYBE may not lawfully provide care for more than four (4) unrelated children because its license expired on July 31, 2009. Such DHSS communications reflect a reckless disregard for TYBE's protected property interest in its daycare license pending administrative and/or judicial review as provided by statute.

TYBE has been duly-licensed by DHSS to be a daycare provider since August 18, 2003. Per DHSS regulations, TYBE timely requested license renewal before July 31, 2009. *See,* DHSS Regulation 19 C.S.R. 30-62.052(1) ("An application for license renewal shall be filed at least sixty (60) days prior to expiration of the license."). DHSS failed to respond to TYBE's license renewal request before July 31, 2009. DHSS finally responded with its notice of proposed denial of license renewal on August 24, 2009. *See,* § 210.245.2 RSMo which states in pertinent part:

> If the department of health and senior services proposes to
> deny… a license, the department of health and senior services
> shall serve upon the applicant or licensee written notice of the

1

> proposed action to be taken. The notice shall contain a statement… that the applicant or licensee shall have thirty days to request in writing a hearing before the administrative hearing commission and that such request shall be made to the department of health and senior services.…

Section 210.245.2 RSMo.

In response, TYBE promptly filed with DHSS its written request for administrative review less than thirty (30) days later on August 26, 2009. Consequently, by operation of law, TYBE's duly-filed request for administrative review automatically stayed the effective date of DHSS proposed non-renewal of TYBE's daycare license. *See*, § 210.245.2 RSMo ("If no written request for a hearing is received by [DHSS] within thirty days of…mailing by certified mail of the notice to the…licensee, the proposed discipline shall take effect on the thirty-first day after such…mailing of the notice to the…licensee.") (alterations added). Therefore, effective date of DHSS's proposed denial of TYBE's license renewal could not become effective before complying with established administrative review procedures.

Moreover, the Administrative Hearing Commission (AHC) Decision (dated, September 10, 2009) did not alter the foregoing analysis because Defendant Bindbeutel held that he did not have subject-matter jurisdiction over the complaint then pending in Case Nos. 09-1223 SP and 09-1224 DH. Defendant Bindbeutel specifically held that "[b]ecause the complaint before us is not one filed by DHSS pursuant to § 210.245.2, we have no jurisdiction." *Id.* The AHC did not make a determination that TYBE was not qualified for license renewal. Furthermore, DHSS has not filed any complaint with the AHC concerning TYBE. Consequently, the effective date of

DHSS's proposed denial of TYBE's license renewal remains stayed pending any appropriate administrative and/or judicial review.

In light of the foregoing analysis, DHSS's position that TYBE may not provide care for more than four (4) unlicensed children is not substantially justified. Moreover, DHSS's intentional communication of such erroneous legal assertions to third-parties has caused and will continue to cause irreparable harm to Petitioners absent an injunction.

*Preliminary Injunction Standard*

All of the *Dataphase* factors militate in favor of the preliminary injunction. "Whether a preliminary injunction should issue involves consideration of ... the threat of irreparable harm to the movant[,] the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant[,] the probability that movant will succeed on the merits[,] and ... the public interest." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 739 [1]-[2] (8th Cir. 2002) (alterations in original) (citing, *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 115 [7] (8th Cir.1981)). In *Dataphase,* the Eighth Circuit reasoned:

> The very nature of the inquiry on petition for preliminary relief militates against a wooden application of the probability test. At base, ***the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined***. The equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case. Thus, an effort to apply the probability language to all cases with mathematical precision is misplaced.

3

\*\*\*

In balancing the equities no single factor is determinative. The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

\*\*\*

It follows that the court ordinarily is not required at an early stage to draw the fine line between a mathematical probability and a substantial possibility of success. This endeavor may, of course, be necessary in some circumstances when the balance of equities may come to require a more careful evaluation of the merits. But *where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation*.

4

*Dataphase,* 640 F.2d at 113 [2]-[4]. This honorable Court should grant Petitioner's motion for preliminary injunction because (1) Petitioner will likely prevail on the merits; (2) Petitioner has suffered irreparable harm and will continue to do so absent a stay; (3) DHSS will not be harmed if the court grants the preliminary injunction; and (4) because of the high probability of similar misconduct by DHSS, the public interest in granting the stay is great. *See, State ex rel. Director of Revenue, State of Mo. v. Gabbert*, 925 S.W.2d 838, 839-840 [4]-[5] (Mo. banc 1996) (citations omitted) (specifically adopting the *Dataphase* factors relative to state administrative proceedings).

*No Hearing Necessary*

For purposes of the preliminary injunction, there is no material factual controversy. Moreover, the Department of Health and Senior Services (DHSS) stipulated on September 8, 2009, that no allegation has been made that any child in TYBE's care is in imminent harm or danger. Therefore, no evidentiary hearing is required in this case because "[a]n evidentiary hearing is required prior to issuing a preliminary injunction only when a material factual controversy exists." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 [10]-[11] (8th Cir. 2002).

*Dataphase Analysis*

1. **Petitioners will likely prevail on the merits**

DHSS is an administrative agency because it is authorized to make rules. *See,* § 192.006 RSMo ("The department of health and senior services may adopt, appeal and amend rules necessary to carry out the duties assigned to it.") and § 536.010(2) RSMo ("'Agency' means any administrative officer or body existing under the constitution or by law and authorized by law or the constitution to make rules…"). "The key principle is that

5

administrative agencies-legislative creations-possess only those powers expressly conferred or necessarily implied by statute." *Bodenhausen v. Missouri Bd. of Registration for Healing Arts*, 900 S.W.2d 621, 622 [1] (Mo. banc 1995).

First, the plain and unambiguous terms of § 210.245.2 merely authorized DHSS to "propose" to deny the renewal of Petitioner's license. "Propose" means "put forward for consideration or as a plan." OXFORD ENCYCLOPEDIC ENGLISH DICTIONARY 1159 (Third ed. 1996). Moreover, § 210.245.2 authorized Petitioner to reject DHSS's proposal and to request an administrative hearing anytime within thirty days of receipt of DHSS's proposal. *Id.* Petitioner did so. Consequently, DHSS's proposal to deny renewal of TYBE's license would not become effective unless and until Petitioner failed to file with DHSS within thirty (30) days a written request for an administrative hearing. *Id.* That has not occurred.

Second, § 621.045.1 RSMo states in pertinent part:

> The administrative hearing commission shall conduct hearings and make findings of fact and conclusions of law in those cases when, under the law, a license issued by any of the following agencies may be revoked or suspended…or refuses to issue or renew a license of an applicant…who possesses the qualifications for licensure without examination:…Department of Health and Senior Services…

*Id.* (alterations added). "The plain meaning of [621.045.1] requires [AHC] to make an independent assessment of the facts to determine whether cause for disciplining a licensee exists." *Kennedy v. Missouri Real Estate Commission*, 762 S.W.2d 454, 456-57 [1] (Mo. App. 1988) (alterations added). "This reading squares with the legislative purpose for creating a

6

Hearing Commission as an administrative body separate and distinct from the licensing agency." *Id.* "[P]rior to the creation of the Hearing Commission, the licensing agency acted as 'investigator, prosecutor, judge, jury and executioner, all rolled into one.'" *Id.* "[T]he legislature placed the determination of the facts and the cause for discipline in the Hearing Commission, separate and apart from the licensing agency." *Id.* "This was to assure the impartiality of this adjudicatory process." *Id.* The AHC has not determined the cause for discipline relating to TYBE. Therefore, DHSS's communications to third-parties are not authorized by law and are misleading, at best.

### 2. Petitioner has suffered irreparable harm

DHSS conveyed a copy of its proposed denial of renewal of license to DSS on August 24, 2009. In response, DSS immediately and unilaterally terminated Petitioner's service contract with DSS. *See,* DSS Termination Letter (dated, August 27, 2009). About 80% of Petitioner's customers are subsidized by DSS and the other third-parties because they are otherwise unable to afford the costs of child-care services. That ongoing loss of financial support remains unabated.

Moreover, on yesterday, September 15, 2009, DHSS agent Shelly Truesdale personally appeared at TYBE's physical location to order Carmen Austell to immediately cease providing daycare services to more than four children. That threat remains unabated.

Furthermore, DHSS has threatened that "Section 210.193…authorizes denials…of child care licenses to be reported to anyone who makes an inquiry to the Family Care Registry…The placement of your name in this registry may affect your ability to obtain employment." That threat also remains unabated.

### 3. DHSS will not be harmed if the district court grants the preliminary injunction

Petitioners have substantially complied with the pertinent statutes and regulations. Moreover, DHSS has never alleged that any child was or is in imminent danger of physical or emotional harm. Because Petitioner is otherwise qualified to renew its license, DHSS will not suffer any harm if this court grants the preliminary injunction.

4. **Because of the high probability of similar misconduct by DHSS, the public interest in granting the stay is great**

Section 621.045.1 clearly removes the authority to deny Petitioner's license renewal from DHSS. *See, Kennedy*, 762 S.W.2d at 456-57 [1]. Furthermore, it is the well-settled policy of the State of Missouri that DHSS make good-faith settlement offers before seeking to impose the proposed discipline on Petitioners. *See,* § 621.045.4 RSMo ("***Notwithstanding any other provision of this section to the contrary***, after August 28, 1995, ***in order to encourage settlement of disputes between any agency described in subsection 1…of this section and its licensees, any such agency shall***: (1) ***Provide the licensee with…the agency's initial settlement offer***,…"). Without justification, DHSS did not do so in this case.

Petitioner also has reason to believe that the issues raised herein are of great public interest because DHSS has acted in excess of its statutory authority in this case and in at least one other. *See, e.g., DHSS v. Betty Robinson,* 08-0450 DH (license expired several months before DHSS issued a notice of denial of renewal).

*Conclusion*

WHEREFORE, for all of the foregoing reasons, Petitioners respectfully pray that this honorable Court enters a preliminary injunction forthwith because (i) the effective date of DHSS's proposed denial of renewal of TYBE's daycare license has not become effective; (ii)

Petitioners will likely prevail on the merits; (iii) Petitioners have suffered and will continue to suffer irreparable harm and injury; (iv) the public interest is great where administrative agencies act in excess of their statutory authority, and (v) Petitioners have no other adequate remedy at law.

### Certificate of Service

I hereby certify that on September 15, 2009, I delivered by e-mail a true and accurate copy of the foregoing Memorandum in Support of Petitioner's Motion for Preliminary Injunction to:

Jim McCoy, Esq.
Department of Health & Senior Services
PO Box 570
1270 Wildwood
Jefferson City, MO 65102
jim.mccoy@dhss.mo.gov
*Counsel for Defendants Quick & Sprenger*

Dana Tucker, Esq.
Office of the Missouri Attorney General
815 Olive Street
St. Louis, MO 63101
dana.tucker@ago.mo.gov
*Counsel for Defendant Bindbeutel*

Respectfully submitted,


/s/ Rufus J. Tate, Jr.____
Rufus J. Tate, Jr. 46993
The Tate Law Firm, LLC
7751 Carondelet, Suite 803
Clayton, MO 63105-3369
314.726.6495 Office
314.726.0424 Fax
tatelawfirm@aol.com
*Counsel for Petitioners*